UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CRIMINAL ACTION NO. 7:24-CR-01-KKC

UNITED STATES OF AMERICA                                    PLAINTIFF

V.                              PLEA AGREEMENT

WAYNE TACKETT                                               DEFENDANT

\* \* \* \* \*

Pursuant to Rule 11(c) of the Federal Rules of Criminal Procedure, the Defendant, Wayne Tackett, will enter a guilty plea to Counts One, Two, and Eight of the Indictment. Count One charges the Defendant with engaging in the business of dealing firearms without being a licensed firearm dealer in violation of 18 U.S.C. § 922(a)(1)(A). Count Two charges the Defendant with transfer of a firearm to a prohibited person, in violation of 18 U.S.C. § 922(d). Count Eight charges the defendant with trafficking firearms in violation of 18 U.S.C. § 933(a)(1). Pursuant to Rule 11(c)(1)(A), the United States will move at sentencing to dismiss Counts Three, Four, Five, Six, and Seven of the Indictment. Pursuant to Rule 11(c)(1)(A), the United States will not bring additional charges against the Defendant based upon evidence in its possession at the time of the execution of this Agreement and arising out of the Defendant's conduct within the Eastern District of Kentucky, unless the Defendant breaches this Agreement.

1

2.  The essential elements of Count One are as follows:

    (a)  The defendant was not licensed to deal firearms; and

    (b)  The defendant willfully engaged in the business of dealing firearms.

The essential elements of Count Two are as follows:

    (a)  The Defendant knowingly disposed of a firearm;

    (b)  The person to whom the Defendant disposed the firearm had, at that time, been convicted of a crime punishable by imprisonment for a term exceeding one year; and

    (c)  The Defendant, at the time of the disposition, knew or had reasonable cause to believe, that the other person had been convicted of a crime punishable by imprisonment for a term exceeding one year.

The essential elements of Count Eight are as follows:

    (a)  The defendant knowingly disposed of a firearm to another person;

    (b)  The defendant knew or had reasonable cause to believe that the use, carry, or possession of the firearm by the other person would constitute a felony; and

    (c)  The disposition of the firearm was in or otherwise affecting interstate commerce.

3.  As to Counts One, Two, and Eight, the United States could prove the following facts, among others, that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

(a) On July 3, 2019, law enforcement officials with the ATF served Carlos Hall with a warning letter for unlicensed firearm dealing. The ATF also provided him with the information he could use to apply to become a licensed Federal Firearms Licensee. Hall did not become licensed to deal firearms.

(b) Hall developed a relationship with the Defendant to continue engaging in the business of dealing firearms, despite the fact that the Defendant was not and never became a licensed Federal Firearms Licensee. Hall would either provide the Defendant with firearms or money for the Defendant to use to obtain firearms that he would sell at the Watergap Flea Market in Floyd County, in the Eastern District of Kentucky. From the proceeds of these firearm sales the Defendant would provide Hall the money that Hall had invested in the purchase of the firearms as well as a portion of the profits made off of the firearm sales. The Defendant was able to keep the remaining portion of the profits from the firearm sales. In this way, the Defendant and Hall grew a firearm business that operated out of the Watergap Flea Market over several years with a large inventory of firearms that were regularly sold for a profit.

(c) In April of 2023, the ATF began to receive the first of a series of reports that individuals believed to be from New York and Chicago were traveling to Watergap Flea Market and purchasing large quantities of firearms from the venders there. Trace and multiple gun sale records confirmed that firearms that had been purchased by the Defendant had been recovered at crime scenes in New York, California, and West Virginia. Firearm records also documented that the Defendant had been involved in the purchase of large numbers of firearms.

(d) On April 20, 2023, the ATF conducted a surveillance operation at the Watergap Flea Market. During this operation, they confirmed that the Defendant had a large number of firearms for sale. The Defendant was regularly at the Watergap Flea Market selling large numbers of firearms despite neither he nor Hall being registered as a Federal Firearms Licensee.

(e) On June 23, 2023 (five firearms for $2,900), June 24, 2023 (one firearm for $1,200), July 14, 2023 (four firearms for $3,500), July 15, 2023 (two firearms for $1,300), July 29, 2023 (four firearms for $5,000), and October 6, 2023 (two firearms for $3,000), law enforcement used a confidential informant to make controlled purchases of firearms from the Defendant at Watergap Flea Market. Over the course of the controlled purchases, law enforcement observed the Defendant's display at the Watergap Flea Market to contain numerous firearms that were displayed for sale on a table and on racks. During one of the purchases, the Defendant estimated that his inventory included fifty to sixty firearms. The Defendant made deals with the informant. For example, the Defendant reduced the price by $50 on July

3

15, 2023 because of the amount of firearms that the informant had been buying from him. However, during the June 23, 2023 controlled transaction, the Defendant indicated that he could not lower the price to match the request of the informant because he had to make money on the transaction. The Defendant also expressed a willingness to actively seek out, acquire, and sell to the informant specific firearms in which the informant had expressed an interest. During the surveillance and controlled purchases, law enforcement learned that the Defendant loaded the firearms into his vehicle when he closed up his display.

(f) As to the controlled transaction on June 23, 2023, the Defendant sold to the confidential informant, among other things, five firearms. The transaction occurred at the Watergap Flea Market in Floyd County, Kentucky. The confidential informant was prohibited from purchasing or possessing firearms due to having a felony conviction. During the June 23, 2023 controlled purchase, the confidential informant told the Defendant that he was a convicted felon, but the Defendant continued to sell firearms to the informant.

(g) As to the controlled transaction on October 6, 2023, the Defendant sold to the confidential informant, among other things, two firearms. The transaction occurred at the Watergap Flea Market in Floyd County, Kentucky. The firearms sold during this transaction were not manufactured in Kentucky and their distribution and possession in Kentucky evidences that they had traveled in and affected interstate commerce. The informant had previously been convicted of a felony offense and his possession of these firearms constituted a felony. The informant had told the Defendant that he was a felon on June 23, 2023, the Defendant knew and acknowledged that the informant was a felon, and the Defendant sold the firearms to the informant knowing that his possession of those firearms would constitute a felony.

(h) On or about October 12, 2023, the confidential informant placed an order to the Defendant, who agreed to meet the informant and make a delivery of the firearms. Law enforcement conducted a traffic stop on the Defendant in his vehicle before he arrived at the site for the transaction. The Defendant consented to a search of his vehicle, which contained 19 firearms. Law enforcement had a federal warrant to search the Defendant's residence and the Defendant also provided consent to search the residence as well. During the search, law enforcement located 55 firearms, ledgers, and $1,976 in

United States currency, including $440 from the October 6, 2023 controlled transaction.

4.   The statutory punishment for Count One is not more than 5 years of imprisonment, a $250,000 fine, and 3 years of supervised release.   The statutory punishment for Counts Two and Eight is not more than 15 years imprisonment, a $250,000 fine, and 3 years of supervised release.   A mandatory special assessment of $300.00 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk as directed by the Court.

5.   Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States and the Defendant recommend the following sentencing guideline calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court:

(a)   The latest version of the United States Sentencing Guidelines (U.S.S.G.) Manual that is in effect at the time of sentencing shall be used to determine the Defendant's guideline range.

(b)   Pursuant to U.S.S.G. § 2K2.1(a)(4)(B), the base offense level is 20 because the offense involved a semiautomatic firearm that is capable of accepting a large capacity magazine and the defendant is convicted under 18 U.S.C. § 922(d).

(c)   Pursuant to U.S.S.G. § 2K2.1(b)(1), increase the offense level by 6 levels because the offense involved between 25-99 firearms.

(d)   Pursuant to U.S.S.G. § 2K2.1(b)(5)(B)(i), increase the offense level by 2 levels because the defendant sold a firearm knowing or having reason to believe that such conduct would result in the receipt of the firearm by an individual who was prohibited.

(e)   Pursuant to U.S.S.G. § 3E1.1, unless the Defendant commits another crime,

5

obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

6.    No agreement exists concerning the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7.    The Defendant will not file a motion for a decrease in offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2 or a departure motion pursuant to U.S.S.G. Chapter 5, Parts H or K.

8.    The United States agrees not to oppose a request by the Defendant to continue on his current conditions of release pending the sentencing hearing in this case.

9.    The Defendant waives the right to appeal the guilty plea and conviction.    The Defendant reserves the right to appeal the sentence. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

10.    The Defendant consents to the forfeiture to the United States, by administrative or judicial proceedings, of all right, title, and interest in the property listed in the forfeiture allegation of the Indictment. The Defendant agrees that this property is subject to forfeiture because a nexus exists between the property and the offense to which he is pleading guilty, as set forth in the forfeiture allegation of the Indictment. The Defendant acknowledges that the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") has administratively

forfeited all the firearms listed in the forfeiture allegation of the Indictment, except the Colt Light Rifle, .270 caliber, with serial number LR002687. The Defendant confirms that he received notice of the administrative forfeiture of these firearms and ammunition, and he voluntarily and knowingly waives any right to contest their forfeiture or seek their return.

The Defendant consents to the entry of a Preliminary Order of Forfeiture, pursuant to Federal Rule of Criminal Procedure 32.2, and agrees take any steps necessary to assist the government in effectuating the surrender and forfeiture of the assets identified herein, including but not limited to executing any documents necessary for the surrender and transfer of title to the United States. The Defendant agrees not to file a claim or petition seeking remission or otherwise contesting the forfeiture of the assets identified herein in any administrative or judicial proceeding, or to assist any other person or entity with doing so, and agrees to withdraw, and hereby withdraws, any such claim or petition that he/she already has submitted. The Defendant voluntarily and knowingly waives all provisions in Rule 32.2 pertaining to notice and/or the timing of forfeiture orders. The Defendant also waives his right, if any, to a jury trial on forfeiture and all constitutional, legal, or equitable defenses to the forfeiture.   The Defendant agrees that this forfeiture is separate and distinct from any restitution, fine, or penalty ordered by the Court and shall survive bankruptcy.

11.   If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an Indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

12.   This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant.   The United States has not made any other promises to the Defendant.

13.   This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

14.   The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

Date 10/29/24

By: _____
Andrew H. Trimble
Assistant United States Attorney

Date: 9/25/24

_____
Wayne Tackett
Defendant

Date: 9/25/24

_____
Stephen W. Owens
Attorney for Defendant

8